**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PERTRICEE HOLLINGTON, | Case No. |
| Plaintiff, | **COMPLAINT** |
| -against- | **JURY TRIAL DEMANDED** |
| CDM FEDERAL PROGRAMS CORPORATION, | |
| Defendant. | |

Plaintiff Pertricee Hollington, by and through his undersigned counsel, alleges as follows:

### NATURE OF THE ACTION

1.      Plaintiff Pertricee Hollington ("Hollington" or "Plaintiff") brings this action to remedy unlawful retaliation taken by his former employer CDM Federal Programs Corporation ("CDM" or "Defendant") against him based on his complaint of harassment and a hostile work environment based on his race, as well as to recover based on CDM's ERISA violations for failure to match Mr. Hollington's contributions to his 401k.

### JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction pursuant to 28 U.S.C §§ 1331 and 1343 because this action involves federal questions regarding the deprivation of Plaintiffs' rights under ERISA. Pursuant to 28 U.S.C. § 1367(a), the Court has supplemental jurisdiction over Plaintiffs' related claims.

3.      In addition, the Court has diversity subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a). Defendant is a citizen of Massachusetts and Plaintiff is a citizen of New York. The amount in controversy exceeds $75,000.00, exclusive of interest and costs.

4.      Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b)(2) as a

8

substantial part of the events giving rise to the claims occurred in Suffolk County, New York.

<strong><u>PARTIES</u></strong>

5.      Mr. Hollington resides in East Setauket, New York in Suffolk County.

6.      CDM is a corporation organized under the laws of Massachusetts with its principle place of business in Boston, Massachusetts.

<strong><u>FACTS</u></strong>

**<u>Retaliation Facts</u>**

7.      Mr. Hollington is an African-American man. He worked as a project inspector for CDM on sites related to the Federal Emergency Management Agency ("FEMA").

8.      At all times, Mr. Hollington resided in New York and, while Mr. Hollington's employment involved travel, his employment was based in New York. For this reason, at all times, CDM withheld New York taxes from Mr. Hollington's compensation.

9.      CDM is part of an organization that secured a contract with the Federal Emergency Management Agency ("FEMA"). The federal contract is known as the Public Assistance Technical Assistance Contract III ("PA TAC III").

10.     In September 2017, CDM's organization secured a task order through the PA TAC III contract to provide services related to Hurricane Harvey's damage in Texas. CDM provided services under PA TAC III until January 2019. In January 2019, CDM's organization secured a new five-year contract, known as PA TAC IV.

11.     Mr. Hollington worked as an inspector for CDM under PA TAC III and PA TAC IV. From approximately August 5, 2018 to approximately August 28, 2018, Mr. Hollington received training in Austin, Texas. From approximately August 29, 2018 to approximately July 31, 2019, Mr. Hollington worked as an inspector for CDM in Houston, Texas under PA TAC III. Then,

from approximately October 1, 2019 to approximately January 15, 2020, Mr. Hollington performed work for CDM as an inspector in Springfield, Missouri under PA TAC IV.

12.     As an inspector, Mr. Hollington was primarily responsible for taking measurements and documenting damage by describing his observations in a report.

13.     In September 2018, on a job site in Texas, Mr. Hollington was the victim of racial-motivated harassment by a co-worker, Rick Lamb. Mr. Hollington complained about the incident to CDM and to FEMA.

14.     FEMA investigated the incident and confirmed that Mr. Hollington was, in fact, the victim of racially motivated harassment. The head of the FEMA division in Houston, Texas, called Mr. Hollington and confirmed that he had investigated the incident and determined that Mr. Hollington was the victim of racially motivated harassment.

15.     Gary Pannozzo, a Senior Program Manager for CDM, called Mr. Hollington and informed him that others had also complained about Mr. Lamb's treatment of Mr. Hollington based on his race.

16.     However, rather than correct the harassment and provide an appropriate remedy to Mr. Hollington, CDM retaliated against Mr. Hollington for complaining about the mistreatment based on his race.

17.     Mr. Pannozzo explicitly told Mr. Hollington not to discuss his complaint with FEMA. CDM was upset that this issue was brought to FEMA's attention and retaliated against Mr. Hollington due to the fact that CDM was forced to address his complaints.

18.     First, CDM moved Mr. Hollington to a job site that constituted a demotion. CDM did not discipline the harasser but it did transfer the harasser to a different office in Texas in the same role. Thus, there was no reason to move Mr. Hollington to a different job site.

19.     Mr. Hollington was emphatic and explicitly stated that he did not want to be moved. He liked the role and job site at which he was then working. Nevertheless, instead, contrary to FEMA's instructions, CDM took no action against the *harasser* and moved Mr. Hollington to a different, less-desirable work site as punishment for Mr. Hollington's complaints.

20.     In September 2018, Mr. Hollington filed a charge of discrimination with the EEOC based on the harassment and CDM's retaliatory demotion of him. Thereafter, CDM's retaliation and motivation to get rid of Mr. Hollington became worse.

21.     Second, CDM denied Mr. Hollington a promotion to Program Delivery Manager ("PDMG").

22.     During his employment, CDM had several opening for PDMGs, including as of late 2018 and through approximately January 2020.

23.     Mr. Hollington applied to those openings on multiple occasions and also let his superiors at CDM know that he was interested in such a promotion. Mr. Hollington is well qualified for the position and has the appropriate experience.

24.     Instead of promoting Mr. Hollington, CDM promoted other, less-qualified candidates. The reason CDM failed to promote Mr. Hollington and promoted the others is because of Mr. Hollington's complaint of harassment and a hostile work environment based on his race.

25.     Third, in mid-2019, Mr. Hollington was one of the last inspectors at CDM to receive an assignment. After finishing the prior site inspection in approximately July 2019, there were numerous additional job sites to which to assign Mr. Hollington. CDM filled those additional jobs with other inspectors instead of Mr. Hollington as retaliation for Mr. Hollington's past complaints.

26.     The job site to which CDM was ultimately assigned, in Missouri, was one of the least desirable jobs to which to be assigned. CDM assigned Mr. Hollington to the undesirable

project because of his prior complaint of harassment and a hostile work environment based on his race.

27.     Fourth, Mr. Hollington received less overtime at the Missouri job site as retaliation for his complaints. Others received significant overtime but CDM denied Mr. Hollington those opportunities for increased work and compensation.

28.     Fifth, Mr. Hollington's supervisor at CDM manufactured false complaints regarding Mr. Hollington to attempt to manufacture a justification for terminating his employment.

29.     In the most-recent false complaint, Mr. Hollington's supervisor at CDM falsely indicated to his superiors and to Mr. Hollington that a FEMA agent at the Missouri job site had complained about Mr. Hollington's performance.

30.     The FEMA agent heard about the alleged complaint from someone other than Mr. Hollington and, without prompting, informed Mr. Hollington that he never made such a complaint. FEMA did not consider any corrective action regarding Mr. Hollington.

31.     CDM's reporting of the complaint was manufactured to create a pretextual reason to terminate his employment.

32.     In 2019, Mr. Hollington submitted several complaints to CDM's human resources department regarding the on-going retaliation against him. On January 24, 2020, Mr. Hollington filed an additional Charge of Discrimination with the EEOC regarding the retaliation he experienced.

33.     Thereafter, CDM fired Mr. Hollington in April 2020 as retaliation for Mr. Hollington's prior complaints of harassment and a hostile work environment as well as his complaints of retaliation. Mr. Hollington's complaints were protected activity, and CDM's adverse employment actions against Mr. Hollington based on his protected activity was unlawful.

34.     CDM had jobs and positions for Mr. Hollington at the time it terminated Mr. Hollington's employment. The only justification for CDM's decision to terminate Mr. Hollington was retaliation for CDM's past complaints of a racially motivated incident.

35.     CDM continues to retaliate against Mr. Hollington by falsely disparaging and defaming him in the industry. CDM has effectively blackballed Mr. Hollington from FEMA inspection work.

**ERISA Violation**

36.     Mr. Hollington was a participant in a 401k plan titled the Capital Accumulation Plan (the "Plan").

37.     The Plan is governed by ERISA.

38.     Pursuant to the Plan and CDM's practices thereunder, CDM was required to match Mr. Hollington's personal contributions to the Plan.

39.     CDM failed to match any portion of Mr. Hollington's contribution to the Plan for the year 2019 or 2020. CDM initially set up a deposit into Mr. Hollington's account for the required amount but later retracted the deposit.

40.     Mr. Hollington did not receive the requirement matching funds from CDM.

**FIRST CAUSE OF ACTION**
**(Retaliation in Violation of the New York State Human Rights Law)**

41.     Plaintiff repeats and re-alleges each and every allegation of the within paragraphs of this Complaint as if set forth herein.

42.     Plaintiff opposed Defendant's harassment and hostile work environment based on his race and engaged in protected activity by complaining of the same to Defendant's human resources department and to the EEOC.

43.     Plaintiff also opposed Defendant's retaliation against him by complaining about

same to Defendant's human resources department and to the EEOC.

44.      Defendant retaliated against Plaintiff for having engaged in protected activity by, among other things, demoting him, giving him less assignments and less desirable assignments, providing him with fewer overtime opportunities, failing to promote him, and terminating his employment.

45.      Defendant's actions constitute retaliation in violation of the New York State Human Rights Law, Executive Law § 296.

46.      As a result of Defendant's retaliation, Plaintiff suffered substantial damages, including, but not limited to, mental distress and lost wages and benefits, in an amount to be determined at trial.

47.      Defendant's conduct was intentional, deliberate, willful, and conducted in callous disregard of the rights of Plaintiff under the law. Thus, Plaintiff is entitled to recover punitive damages. In addition, Defendant is liable for interest, attorneys' fees, and costs.

## SECOND CAUSE OF ACTION
(Violation OF ERISA § 502(a)(1)(B))

48.      Plaintiff repeats and re-alleges each and every allegation of the within paragraphs of this Complaint as if set forth herein.

49.      Defendant's Capital Accumulation Plan is, and at all times relevant hereto was, an "employee benefit plan" within the meaning of ERISA § 3(3), 29 U.S.C. § 1002(3), an "employee welfare benefit plan" within the meaning of ERISA § 3(1), 29 U.S.C. § 1002(1), and an "employee pension benefit plan" within the meaning of ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A). Further, the Plan is an "eligible individual account plan" within the meaning of ERISA § 407(d)(3), 29 U.S.C. § 1107(d)(3), and also a "qualified case or deferred arrangement" within the meaning of I.R.C. § 401(k), 26 U.S.C. § 401(k).

50.     Defendant is the Plan Sponsor and the Plan Administrator of the Plan.

51.     Defendant failed to make the required matching contribution to Plaintiff's 401k for 2019 and 2020 as required under the Plan, and retracted deposits it made such that Defendant denied Plaintiff the required compensation,

52.     By its actions, Defendant's refusal to make matching contributions constitutes a wrongful denial of benefits under § 502(a)(1)(B) of ERISA, 29 U.S.C § 1132(a)(1)(B).

53.     The Plan does not require Plaintiff to pursue administrative remedies prior to bringing this action.

54.     Regardless, any administrative procedure provided for by the Plan would have been futile given Defendant's retaliatory treatment of Plaintiff and Defendant's willful failure to make wage payments to Plaintiff.

55.     As a result of Defendant's actions and failure to perform its obligations, Plaintiff has suffered damages, including, but not limited to, the value of the appropriate contribution and any gains that would have occurred thereon, plus pre- and post-judgment interest, costs, and attorneys' fees.

## JURY TRIAL DEMANDED

56.     Plaintiff demands a jury trial on all issues so triable.

## PRAYER FOR RELIEF

Plaintiff Pertricee Hollington demands a judgment against Defendant CDM Federal Programs Corporation for the following:

a.  An award of Plaintiff's actual damages in an amount to be proven at trial for Plaintiff's loss of compensation and professional opportunities, including back pay and front pay at the rate of pay for the denied promotions;

b.  An award of damages in amount to be determined at trial to compensate Plaintiff for his mental anguish, humiliation, embarrassment, and emotional injury;

c.  Liquidated damages;

d.  Punitive damages,

e.  Prejudgment interest on all amounts awarded at the highest rate allowable by law;

f.  Attorneys' fees and costs;

g.  Post-judgment interest on all amounts awarded at the highest rate allowable by law; and

h.  All other relief the Court finds proper.

Dated: December 18, 2020

RASCO KLOCK PEREZ & NIETO, LLC

By: _____
        Blaine Bortnick
        James Halter
555 Fifth Avenue, 17th Floor
New York, New York 10017
(646) 970-4770
*Attorneys for Plaintiff Pertricee Hollington*

8